J-S12026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KIRK KAPEACE GILLUMS | : | |
| | : | |
| Appellant | : | No. 1601 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 13, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0001985-2019

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                **FILED:  FEBRUARY 22, 2021**

Kirk Kapeace Gillums (Appellant) appeals *pro se* from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his entry of a negotiated *nolo contendere* plea to indecent assault[1] and other offenses.  This appeal returns to this panel after we remanded, on April 13, 2020, for the trial court to conduct a ***Grazier***[2] hearing.  The trial court has determined Appellant may proceed *pro se* on appeal, and both parties have filed new briefs in this Court.  Appellant now: (1) presents several claims of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3126(a)(1).

[2] ***See Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998) (when waiver of right to counsel is sought at appellate stage, on-the-record determination should be made that waiver is knowing, intelligent, and voluntary).

both ineffective assistance of counsel and challenges to the discretionary aspect of sentencing; (2) argues his sentence is illegal because the trial court failed to award sentencing credit and because the prison is unsafe due to the COVID-19 pandemic; and (3) contends his SORNA registration requirements are unconstitutional. We affirm.

The trial court summarized the underlying facts as follows:

In early August of 2017, the victim, [L.B.], contacted Schneider Moving and Storage via an on-line inquiry to provide long distance moving services from her current apartment . . . in Newtown Township, Bucks County, to her new home . . . in Winter, Wisconsin. [T]he victim was given a quote and was informed that Kirk[, (Appellant's first name),] was her account manager and that she should contact him directly on his cell phone. The victim never got a last name or any other identifying infowrmation.

In the following weeks Kirk and the victim had several text conversations about the details[.] On August 17th, 2017, [L.B.] received a text from Kirk informing that the original quote was broad and with an in-home visit he may be able to reduce it by as much as 20 percent. They decided the visit would occur on August 29th of 2017.

On the 29th of August, [s]hortly after 10:00 a.m., a black male[, Appellant,] arrived on the property as a rear passenger inside a sedan. The male came to the door introducing himself as Kirk, and the victim invited him into the apartment. The victim and [Appellant] had coffee while affirming details[.]

They then walked around the apartment to assess the work, during which the victim felt Kirk brush up against her bottom several times. Once they were done the walk-through they negotiated an amount. The victim, based on prior conversations, said that the down payment was going to be $1,100 in cash, but Kirk said it was now $1[,]440. The victim provided Kirk with cash of $1[,]440, and he said he would [e-mail a receipt] to her.

As they walked to door, Kirk asked for a hug. The victim thought it was odd but also thought that he seemed like a nice man, so

- 2 -

she gave him a hug. While doing so, Kirk began roughly grabbing her vaginal area and sliding his fingers around while whispering in her ear, "I want to fuck your pussy." Kirk also kissed her while inserting his tongue into her mouth, and she pulled away. Kirk then turned and walked out the door.

The victim began crying and had her son call 911.

Minutes after Kirk left the house, the victim received a text from Kirk's cell that contained a digital image of [Appellant] sitting behind a desk that said, "Why don't you take a road trip to my house you Wicked Witch." The text was followed by a digital image of a black penis.

The victim complained of vaginal pain and went to Aria-Bucks Hospital, where she underwent a sexual assault exam. [T]he medical staff described abrasions to the vaginal area that were also digitally photographed.

[In the investigation, the police identified Appellant] with the cell phone number provided as the probable possessor of it, with [an] address in New York. [The police] prepared a [photo] line-up for the victim, who immediately identified [Appellant] as the individual who assaulted her.

[The police] contacted . . . Schneider Moving and Storage and confirmed that Kirk had been employed there; however, had not been for two weeks for similar actions. The move that was scheduled with the victim did not take place.

Trial Ct. Op., 7/20/20, at 1-3 (footnote omitted).

On May 13, 2019, Appellant entered a negotiated *nolo contendere* plea to indecent assault, simple assault, and theft by unlawful taking.[3] He was represented by Bucks County Assistant Public Defender Bradley Bastedo, Esq. The trial court immediately imposed the sentences negotiated by the parties:

---

[3] 18 Pa.C.S. §§ 2701(a)(1), 3921(a).

(1) two consecutive terms of one to two years' imprisonment, for indecent assault and simple assault; (2) a consecutive three years' probation for theft by unlawful taking; and (3) restitution of $2,264.12.[4]  N.T., *Nolo Contendere Plea & Sentencing H'rg*, 5/13/19, at 7-8, 31.  The aggregate sentence was thus two to four years' imprisonment and three years' probation, and was to be served concurrently with any other sentence "he might be serving, particularly that in Connecticut."  **Id.** at 31-32.  Finally, the court ordered Appellant to comply with SORNA registration for a period of 15 years.[5]  **Id.** at 18.  We note that at the time of this hearing, Appellant was serving a sentence in Connecticut, and would be remanded to the Connecticut prison.  **Id.** at 20, 29.

On May 28, 2019, Appellant, although represented by counsel, filed a timely *pro se* notice of appeal.  Attorney Bastedo subsequently averred he was not aware Appellant would file a *pro se* notice of appeal.[6]  In any event, we

---

[4] The restitution amount included the $1,440 cash that Appellant took from the victim, as well as the cost of the flight and hotel for the victim — who had moved to Wisconsin — to appear at the sentencing hearing.  N.T. at 27-28.

[5] Pennsylvania Sex Offender Registration and Notification Act, 42 Pa.C.S. §§ 9799.10 to 9799.42.  **See** 42 Pa.C.S. §§ 9799.14(b)(6) (classifying indecent assault as Tier I offense), 9799.15(a)(1) (requiring Tier I offender to register for 15 years).

[6] Appellant's Petition for Extension of Time to File Docketing Statement, 6/19/19, at 1; Appellant's Petition for Extension of Time to File Statement of Matters Complained of on Appeal, 6/19/19, at 1.

note Appellant did not file any post-sentence motion. The trial court properly entered the *pro se* notice of appeal on the docket, forwarded notice to Attorney Bastedo,[7] and directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The ensuing procedural history was set forth in detail in this Court's April 13, 2020, memorandum, and we need not repeat it.[8] At this juncture, we summarize the following salient points: no Rule 1925(b) statement was ever filed. Attorney Bastedo advised both the trial court and this Court that he had attempted, unsuccessfully, to communicate with Appellant in the Connecticut prison. Nevertheless, Appellant continued to file *pro se* documents in this Court.[9] Upon this Court's October 15, 2019, *per curiam* order, the trial court conducted a **Grazier** hearing and permitted Appellant to proceed *pro se*. Thereafter, Appellant filed a *pro se* brief. This

---

[7] **See** Pa.R.Crim.P. 576(A)(4) (if represented criminal defendant submits for filing a written notice that has not been signed by his attorney, clerk of courts shall accept it for filing, and copy of time-stamped document shall be forwarded to defendant's attorney and Commonwealth within 10 days). This Court likewise entered the notice of appeal on our docket. **See** Superior Ct. O.P. § 65.24 (*pro se* notice of appeal received from trial court shall be docketed, even where appellant is represented by counsel).

[8] **See Commonwealth v. Gillums**, 1601 EDA 2019 (unpub. memo. at 3-5) (Pa. Super. Apr. 13, 2020).

[9] On August 29, 2019, this Court sent a **Jette** letter to counsel, enclosing the *pro se* documents received from Appellant. **See Commonwealth v. Jette**, 23 A.3d 1032, 1044 (Pa. 2011) (proper response to any *pro se* pleading is to refer pleading to counsel, and to take no further action on *pro se* pleading unless counsel forwards a motion).

panel concluded, however, Appellant's issues would be waived for Attorney Bastedo's failure to comply with the trial court's Rule 1925(b) order.[10] We thus remanded, on April 13, 2020, for the trial court to conduct a second *Grazier* and to allow Appellant, whether *pro se* or with counsel, to file a Rule 1925(b) statement *nunc pro tunc*.

The trial court has conducted the *Grazier* hearing and determined Appellant may proceed *pro se*. Appellant filed a Rule 1925(b) statement, the trial court issued an opinion, and both parties have filed new briefs in this Court.

Preliminarily, we note deficiencies in Appellant's *pro se* brief. He has failed to include a statement of questions involved in his brief. *See* Pa.R.A.P. 2111(a)(4) (appellant's brief shall include, separately and distinctly entitled, a statement of the questions involved); 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail."). The argument section of his brief, entitled "Memorandum of Law," does not include headings. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into

---

[10] *See Commonwealth v. Parrish*, 224 A.3d 682, 693 (Pa. 2020) ("[A]ll appellants must file a Rule 1925(b) statement, if ordered to do so by the trial court, enumerating all issues they wish to have the appellate court consider, or those issues will be deemed waived for appellate review.") The Commonwealth acknowledged, in its brief, that the failure to file a Rule 1925(b) statement does not appear to have been caused by any fault of Appellant.

as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Furthermore, the argument itself, rather than being organized by issues, jumps from claim to claim, and some claims are discussed, to varying degrees, over different pages. These defects are amplified by Appellant's general lack of meaningful discussion. **See id.**; Appellant's Brief at 5-15. As a result, Appellant's argument is a disorganized assortment of prolix bald accusations.

We remind Appellant that "*pro se* defendants are subject to the same rules of procedure as are represented defendants," "*pro se* status confers no special benefit upon a litigant, and a court cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." **See Commonwealth v. Blakeney**, 108 A.3d 739, 766 (Pa. 2014). Nevertheless, because we may discern the gist of Appellant's claims, we will address them. Briefly, Appellant's issues are: (1) claims of ineffective assistance of counsel; (2) challenges to the discretionary aspects of his sentence; (3) an illegal sentence claim due to the court's failure to award sentencing credit; (4) the unconstitutionality of SORNA registration requirements; and (5) an illegal sentence due to unsafe COVID-19 conditions at the prison.

First, Appellant raises multiple claims of plea counsel's alleged ineffective assistance. Appellant avers counsel was unavailable "following Appellant's sentencing hearing" and "did not file a post-sentence motion, PCRA[11] application or direct appeal," and thus "Appellant, a layman at matters of law, had to file his Notice of Appeal, *pro se*, on May 28th, 2019." Appellant's Brief at 5, 7. Appellant also alleges counsel: (1) "did not have a reasonable basis for advising [him] to plead nolo contendere to . . . Indecent Assault;" (2) "failed to fully explain the risks and ramifications" relating to SORNA; and (3) did not raise "an objection to the Court's failure to entertain mitigating factors[12];" and (4) lacked sufficient "knowledge of the Jail-Time Credit Act as [counsel] failed to advise Appellant that his nolo contendere plea was in exchange for a definite sentence with a specific start date, absent time served." *Id.* at 6, 10.

We conclude these ineffective claims are waived, as Appellant did not raise them before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

_____

[11] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9545.

[12] Appellant provides no further explanation for this reference to "mitigating factors," aside from a citation to **Commonwealth v. Tigney**, 730 A.2d 968 (Pa. Super. 1999). Appellant's Brief at 6. We note **Tigney** addressed a claim that "trial counsel was ineffective for not raising an objection to the trial court's failure to inform him of his right of allocution pursuant to [former] Pa.R.Crim.P. 1409(C)(1)," now renumbered as Pa.R.Crim.P. 704(C)(1). **Id.** at 969. **Tigney** did not, however, make any mention of "mitigating factors."

Furthermore, we agree with the trial court that claims of ineffective assistance of counsel are generally "not eligible under direct appeal, but should be brought instead under the" PCRA. *See* Trial Ct. Op. at 5. The Pennsylvania Supreme Court has explained:

> [W]here the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness . . . on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, **but only if (1) there is good cause shown, and (2) the unitary review** so indulged **is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review** from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

*Commonwealth v. Holmes*, 79 A.3d 562, 564 (Pa. 2013) (emphases added and footnotes omitted). As Appellant did not raise any ineffectiveness claims before the trial court, he likewise did not show "good cause" why pre-collateral review is proper, nor did he waive his PCRA rights. *See id.* Accordingly, we conclude no relief is due, without prejudice to Appellant to properly raise these issues in PCRA proceedings.

Next, Appellant raises the following various challenges to his sentence: "The Court colloquy was inadequate, insofar [as] the sentencing judge did not place on the record the reasons for dispensing with the pre-sentence investigation report[.]" Appellant's Brief at 7. The trial court miscalculated his prior record score and offense gravity score, and "neglect[ed] to consider mitigating factors or the incongruousness of Appellant's out-of-state record." *Id.* at 7-8. At the preliminary arraignment, his counsel and the

- 9 -

Commonwealth "agreed to a sentence of two to four years." *Id.* at 8. "[T]he offenses served as the sole basis for determining the sentence." *Id.* We conclude these claims are waived.

These claims go to the discretionary aspects of sentencing. *See Commonwealth v. Sunealitis*, 153 A.3d 414, 421 (Pa. Super. 2016) (claim of improper calculation of offense gravity score); *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (challenge to calculation of prior record score); *Commonwealth v. Goggins*, 748 A.2d 721, 727-28 (Pa. Super. 2000) (*en banc*) (claim that sentencing court failed to state adequate reasons for dispensing with a pre-sentence report).

As stated above, Appellant entered into a negotiated *nolo contendere* plea, and received the sentence agreed upon: two consecutive terms of one to two years' incarceration, to be followed by three years' probation. N.T. at 7-8, 31. Accordingly, he may not now challenge the discretionary aspects of his sentence. *See Commonwealth v. Morrison*, 173 A.3d 286, 290 (Pa. Super. 2017) ("It is well settled when . . . the plea agreement contains a negotiated sentence which is accepted and imposed by the sentencing court, there is no authority to permit a challenge to the discretionary aspects of that sentence."). Additionally, these sentencing claims are waived, as Appellant did not raise them at sentencing or in any post-sentence motion. *See Sunealitis*, 153 A.3d at 420 (to preserve an appellate challenge to the

discretionary aspects of a sentence, an appellant must, *inter alia*, preserve the issue at sentencing or in a motion to reconsider and modify sentence).

Third, Appellant contends his sentence is illegal because the trial court did not grant him sentencing credit, from March 20 to May 13, 2019, when he was "in custody" as a result of the instant criminal charges. Appellant's Brief at 9. He avers: (1) "Although [he] was officially detained in Connecticut prior to sentencing, [he] is entitled to [this] credit[;]" (2) the fact that Connecticut "was the first to arrest Appellant was immaterial, as the doctrine of primary jurisdiction does not determine how credit is allocated when two or more sovereigns imposed sentences;" and (3) "Appellant's pretrial incarceration was attributable to both the CT detainer and the new criminal charges." *Id.* at 9-10. He then reasons that the Connecticut "incarceration was not already credited to his CT detainer, because the PA Court did not have the discretion to give Appellant 'double credit' for time already served concurrently." *Id.* at 11. No relief is due.

We note Appellant did not raise the issue of sentencing credit before the trial court. However, this claim goes to the legality of his sentence and thus cannot be waived. *See Commonwealth v. Druce*, 868 A.2d 1232, 1235 (Pa Super. 2005). "[T]he issue of whether a sentence is illegal is a question of law; therefore, our task is to determine whether the sentencing court erred as a matter of law and, in doing so, our scope of review is plenary." *Id.* at 1236.

Section 9760 of the Sentencing Code provides:

After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

(1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody **as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based**. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa.C.S. § 9760(1) (emphasis added). Credit may not be awarded for time served on charges unrelated to the sentence for which a defendant seeks credit. **See Taglienti v. Dep't of Corr.**, 806 A.2d 988, 991-92 (Pa. Cmwlth. 2002) ("It is clear that the first three [subsections of] Section 9760 do not permit a sentencing court to provide a prisoner with credit for time served on another unrelated offense."); **Doria v. Pa. Dep't of Corr.**, 630 A.2d 980, 982 (Pa. Cmwlth. 2002) ("[T]he rule in Pennsylvania is well settled that credit for **pre-sentence custody time** cannot be earned against criminal charges pending in a different county.").[13]

Although the trial court did not address the merits of this claim, **see** Trial Ct. Op. at 8, the Commonwealth points out — and Appellant's own

---

[13] "While decisions of the Commonwealth Court are not binding upon us, they may serve as persuasive authority." **Commonwealth v. Simmons**, 56 A.3d 1280, 1284 n.1 (Pa. Super. 2012).

argument concedes — that he was incarcerated in Connecticut on Connecticut charges during the 54-day period for which he now demands credit. **See** Commonwealth's Brief at 15; Appellant's Brief at 9 ("Although [he] was officially detained in Connecticut prior to sentencing, [he] is entitled to [this] credit."). A careful review of Appellant's brief reveals the absence of contrary argument that would support his claim for sentencing credit; Appellant does **not** aver his detention in Connecticut was solely a result of the instant charges, nor does he claim he did not receive credit for that time on his Connecticut charges. Thus, we agree with the Commonwealth that "Appellant has provided no argument or legal authority . . . why he is entitled to this credit as he was serving another sentence in Connecticut during that same time period." **See** Commonwealth's Brief at 15. We reiterate that we "cannot be expected to become a litigant's counsel or find more in a written *pro se* submission than is fairly conveyed in the pleading." **See Blakeney**, 108 A.3d at 766. For the foregoing reasons, no relief is due.

Fourth, Appellant argues the trial court's "application of the SORNA statute was an abuse of discretion" and the imposition of SORNA registration requirements "without a jury trial is unconstitutional." Appellant's Brief at 12. He also "avers the disconnect between sexually violent predators ('SVPs') and misdemeanor indecent assault with no sexual element is so broad as to constitute judicial overreach." **Id.**

These challenges to Appellant's registration requirements are waived because they were not raised before the trial court. *See* Pa.R.A.P. 302(a); *Commonwealth v. Resklink*, 2020 WL 7415959 at ** 3-4 (Pa. Super. 2020) (defendant waived appellate challenge to SORNA registration where he did not raise them "before the trial court, in a motion to bar application of SORNA, or in post-sentence motions," and instead raised them "for the first time on appeal"). Furthermore, Appellant is mistaken that the trial court had discretion to choose whether to impose the provisions of SORNA, or that a jury trial was required before SORNA was applied. Instead, the provisions, whenever invoked by the fact of a defendant's conviction, are mandatory. *See* 42 Pa.C.S. § 9799.23(b)(1) ("**All** sexual offenders must register in accordance with this subchapter. . . . Failure by the court to provide the information required in this section, to correctly inform a sexual offender of the sexual offender's obligations or to require a sexual offender to register shall not relieve the sexual offender from the requirements of this subchapter.").

Appellant's final claim is that his sentence is illegal because unsafe COVID-19 conditions exist at his prison, SCI-Chester. Appellant's Brief at 13. He cites "[t]he potential outbreak of COVID-19 in facilities housing adult offenders" and the "inadequate" action by the Pennsylvania Department of Corrections (DOC) "to mitigate the potential of an institutional health crisis." *Id.* Appellant maintains he is 57 years old, is African American, and has "preexisting medical conditions and an immune deficiency." *Id.* He avers

that continued incarceration during the "pandemic may subject [him] to illness or death and a violation of his right to due process and not to be subject to cruel and unusual punishment." *Id.* No relief is due.

We note that whereas Appellant was sentenced on May 13, 2019, the COVID-19 pandemic in Pennsylvania did not begin until the spring of 2020. The pandemic is not related to the trial court's authority to impose the sentence, and thus cannot be the basis of any alleged illegality. Furthermore, as the trial court points out, any issue relating to safety conditions of the prison are not proper in a direct appeal, **see** Trial Ct. Op. at 8, but instead would be properly addressed to the Department of Corrections.

As we conclude none of Appellant's claims merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/22/21